Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-200-ELG |
| | ) | (Chapter 11) |
| JPK NEWCO LLC | ) | |
| | ) | |
| Debtor. | ) | |

**OPPOSITION OF WCP FUND I LLC TO
DEVELOPER RE1, LLC'S AND 423 KENNEDY ST.
HOLDINGS, LLC'S OBJECTION TO SUBCHAPTER V DESIGNATION**

Come now JPK NewCo LLC ("JPL" or the "Debtor") and WCP Fund I LLC ("WCP"), the

largest equity holder of the Debtor, by and through undersigned counsel, in opposition to

Developer RE1, LLC's and 423 Kennedy St. Holdings, LLC's Objection to Subchapter V

Designation (the "Objection," as found at DE #42, with the proponents thereof being known as

"DRL" and "423 Kennedy" and being collectively known as the "Movants"), and state as follows:

**I.    Introduction**

The objection cites to five cases in furtherance of an argument that JPK does not qualify

as a "small business debtor." Three of those cases concern Subchapter V proceedings where the

at-issue debtor was found to qualify as a small business, one of those cases stands for the

proposition that a W-2 employee is not engaged in business activities, and the fifth case is a chapter

9 proceeding. While the extent of a party's citations is assuredly not synonymous with the legal

fidelity of that same party's correlative argument, the inability of the Movants to point to a single

1

case favorable to their position on the facts presented in this case appears symptomatic of a larger

issue: the Objection evinces a fundamental misapprehension of the criteria governing whether or

not a debtor in bankruptcy qualifies as a small business.

Though Subchapter V is scantly five years old, a relatively mature and developed body of

case law speaks to what does—and what does not—qualify as a "small business debtor"

thereunder. Few (if any) legal entities have been found to fail the statutory test. And precedent

well establishes that commercial activities well shy of those being undertaken by JPK are sufficient

to qualify for Subchapter V reorganization.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Objection be

overruled.

## II.    Statement of Relevant Facts

Insofar as the Movants appear to be interested in using their Objection as a pretext for

taking discovery, *see* Objection, DE #42, at p. 5, a proffer of relevant facts—unlikely to be subject

any good faith dispute—is topically appropriate.

1.    JPK was formed on February 1, 2024. *See* Debtor's History, DE #31-1, at § 1(A)(i).

2.    The Debtor's two members are WCP Fund I LLC and SF NU, LLC, which

respectively own 70.56% and 29.44% of JPK. *See* Statement of Financial Affairs, DE #1, at p. 38,

§ 28.

3.    The Debtor's two members capitalized the company through their contribution of

promissory notes and assignment of deeds of trust securing those promissory notes. *See* Opposition

to Motion to Dismiss, DE #29, at § II(c).

4.    JPK holds three assets: (i) a promissory note on which, as of the petition date,

$2,169,087.98 is due and owing; (ii) a promissory note on which, as of the petition date,

$911,426.88 is due and owing; and (iii) a promissory note on which, as of the petition date, $30,487.66 is due and owing. *See* Schedule A/B, DE #1, at p. 16, § 71 (Continuation Sheet).

5.      The Debtor has no secured creditors. *See* Schedule D, DE #1, at p. 17.

6.      The Debtor has three unsecured creditors, two of which (the Movants) hold disputed, unliquidated and contingent claims. *See* Schedule E/F, DE #1, at p. 19.

7.      The Debtor's total liabilities, on the petition date, were less than $3,424,000.00. *Id.*

8.      None of the Debtor's liabilities are of a consumer variety. *Id.*

9.      "The Debtor's principal place of business is the WCP's offices in McLean, Virginia, an address that is shared with the WCP Fund and where [Daniel] Huertas' office is located." Objection, DE #42, at ¶ 4.

10.     "The Debtor has no employees. . ." *Id.* at ¶ 9.

11.     The Debtor ". . . does not maintain its own facilities. . ." *Id.*

12.     The Debtor is presently a defendant in now-stayed litigation pending in the Superior Court of the District of Columbia, in which the Movants are the plaintiffs. *See* Statement of Financial Affairs, DE #1, at p. 28, § 7.2.

13.     The Debtor does not own any paper clips.

14.     The Debtor does not have a phone line.

15.     The Debtor was formed on the advice of counsel. *See* Opposition to Motion to Dismiss, DE #29, at § II(c).

16.     The Debtor was formed with cognizance the entity may thereafter seek to reorganize in chapter 11. *Id.*

For the avoidance of doubt or ambiguity, the Debtor and WCP do not herein rely on *any* other business activities being conducted by the Debtor. As discussed below, no such additional business activities would be required for the Debtor to qualify as a "small business debtor."

### III.    Standard

To qualify as a "small business debtor," Title 11 of the United States Code (the "Bankruptcy Code") requires one be:

> . . . engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $3,424,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor. . .

11 U.S.C. § 101(51D)(A). The same definitional construct expressly excludes certain members of groups of affiliated debtors (meeting a debt threshold criterion), entities subject to reporting requirements under the Securities Exchange Act of 1934, and affiliates of entities with such reporting requirements. 11 U.S.C. § 101(51D)(B).

The Objection suggests that to qualify as a "small business debtor," an entity also must have debt of at least $7,500.00. *See* Objection, DE #41, at ¶ 5. The Debtor and WCP do not believe this is an accurate assertion but, rather, this contention appears to be a combination of (i) the inadvertent omission of the word "not" in the Objection; and (ii) the inadvertent omission of a "0" in an unpublished opinion, *In re GCPS Holdings, LLC*, 2024 Bankr. LEXIS 2832, at *4 (Bankr. S.D. Tex. Nov. 20, 2024), addressing a case filed before Congress failed to renew the applicable debt limit. In any event, since there is no dispute but that the Debtor has debts of at least $7,500.00, this issue is immaterial *sub judice*.

4

## IV.    Argument: JPK is a Small Business Debtor

The unwritten thesis of the Objection appears to be that the Debtor's operations are too small to qualify as a small business debtor. The Movants seemingly propose that in order for an entity to qualify for Subchapter V relief, the entity must have a vibrant flurry of ongoing business activities in either a consumer-facing or business-to-business capacity.  Not one authority cited in the Objection comes anywhere near standing for such a proposition.  Other relevant authorities make clear there is no merit in such a proposition, and allowance of such a proposition would seemingly serve to bar myriad varieties of oft-accepted small business debtors from utilizing the reorganizational tools of Subchapter V.

As a starting point, undersigned counsel are not aware of *any* published opinion holding a legal entity (as opposed to a natural person) does not qualify as a "small business debtor" for reasons related to engagement in business activities. To the contrary, at least one court has openly suggested that legal entities are, almost *per se*, "engaged in commercial or business activities" for Subchapter V purposes:

> Moreover, the Court highlights a notable distinguishing factor that existed in *Thurmon* and *Johnson* but that is not present in the current case—the debtors in both of those cases were individuals, not business entities. While the text of SBRA makes no legal distinction between individuals and business debtors under Subchapter V, the Court believes that the factual distinction between the two is significant in understanding the conclusions reached in *Thurmon* and *Johnson*. In both cases, the debtors filed for relief under Subchapter V in their individual capacities. Thus, when the U.S. Trustee raised its objection to their elections, the debtors were forced to try and tether themselves to their former businesses—businesses which, themselves, were not in bankruptcy. Given that the debtors in *Thurmon* and *Johnson* were a level removed from the businesses themselves, they faced the challenge of bridging the gap between their commercial or business activities and their businesses' commercial or business activities. While this may appear to be a distinction without a difference, in light of the courts' rulings in *Thurmon* and *Johnson*, the Court believes that it is an important aspect of the eligibility analysis when considering the totality of the circumstances. And, in this case, because the Debtor *is the business*, it had no gap to bridge regarding its commercial or business activities.

*In re Offer Space, LLC*, 629 B.R. 299, 310-11 (Bankr. D. Utah 2021) (referencing *In re Thurmon*, 625 B.R. 417 (Bankr. W.D. Mo. 2020); *In re Johnson*, 2021 Bankr. LEXIS 471 (Bankr. N.D. Tex. Mar. 1, 2021)) (emphasis in original).

Pertinently, the debtor in *Offer Space*—which, as noted above, was found to be a small business—held only a bank account, receivables, litigation claims, and stock. *Offer Space, LLC*, 629 B.R. at 303. Moreover, "the Debtor had no employees, was no longer conducting business in the manner previously described, and had no intention to reorganize its business," and "the Debtor was using reasonable efforts to pay its creditors and realize value for its assets." *Id.* All of which does not differ, materially, from what the Movants allege of the Debtor: an entity that holds only a bank account, notes receivable and litigation claims, which does not have any employees, and which has already filed a confirmable Plan to reorganize for value-centric reasons.

Of course, *Offer Space* is a four year old case in a legal arena that is only five years old. Yet, the evolution of case law over those ensuing years has only served to etch an even starker standard of the truly minimalistic activities required for an entity to qualify as a small business debtor.

In 2023, the United States Bankruptcy Court for the Eastern District of New York noted that "it is important to recognize that a business need not be continuing its usual or prior business operations in order for it to be 'engaged or commercial activities.' . . . Simply put, ongoing 'business operations' are not required to open the door to Subchapter V." *In re Fama-Chiarizia*, 655 B.R. 48, 68 (Bankr. E.D.N.Y. 2023). Indeed, ". . . the substantial majority of courts that have found that a debtor may be eligible to reorganize under Subchapter V when it seeks to address residual business debt, and to marshal residual business assets." *Id.* at 69.

6

Also in 2023, the United States Bankruptcy Court for the Northern District of New York went even a step further, finding that the mere act of defending a state court lawsuit, related to former business activity, "is sufficient winding down activity for the Debtor to satisfy the 'engaged in commercial or business activities' requirement of § 1182(1)(A)." *In re Hillman*, 2023 Bankr. LEXIS 1448, at *9 (Bankr. N.D.N.Y. June 2, 2023).

Here, of course, there is no dispute but that the Debtor is defending a state court lawsuit—one brought by the Movants, no less. And while the Debtor certainly does not conceive of its three promissory notes and two accompanying deeds of trust as being mere "residual assets," the Debtor is most certainly looking to strategically marshal its assets as part of the chapter 11 process. The Debtor is an entity that, under either the *Hillman* or *Fama-Chiarizia* standard, handily qualifies as being eligible for Subchapter V relief.

Nor have Movants cited cases persuasive to the contrary. As noted *supra*, the Objection references only five cases, of which only four concern Subchapter V proceedings. The first such case is *GCPS Holdings*, where the debtor—as titularly suggested—was a holding company. *See GCPS Holdings*, 2024 Bankr. LEXIS 2832, at *1. The debtor could not secure a contract to sell pipe made with a patented technology, *id.* at *1-2, and was thereafter forced into an involuntary bankruptcy proceeding, *id.* at *2, in which a Subchapter V election was made, *id.* The United States Bankruptcy Court for the Southern District of Texas found *GCPS Holdings* was engaged in activity sufficient to qualify for Subchapter V relief. *Id.* at *8.

The Objection next invokes *In re Ikalowych*, 629 B.R. 261 (Bankr. D. Colo. 2021), a case where the debtor was a natural person, holding a salaried job, with no ownership interest in his employer. *Id.* at 269. He had formerly been a manager of a business that, pre-petition, ceased operations and surrendered all of its assets. *Id.* at 270. He also owned 100% of an entity that, while

7

still legally extant, had ceased furnishing property management services roughly six years pre-petition (though the entity still received $3,000.00 per year for the debtor's service on the board of directors of a cemetery). *Id.* 271. Despite the *Ikalowych* debtor being a natural person, whose sole direct source of income (aside from $3,000.00 in pass-through cemetery board fees) came from a W-2 job, the United States Bankruptcy Court for the District of Colorado still held the individual to be eligible for Subchapter V relief. *Id.* at 288.

Later in the Objection, the Movants cite to *In re Nat'l Small Bus. All.*, 642 B.R. 345 (Bankr. D.D.C. 2022), a case that is assuredly familiar to this Honorable Court. Many of the more colorful eccentricities of that case are nowhere found in the published opinion (including rather serious allegations the debtor was operating a telemarketing scam from a boiler room in Tijuana). *Id.*, *passim*. But the holding itself—which is what is invoked by the Movants—is of utterly no moment to the Debtor's case. Rather, *Nat'l Small Bus. All.* concerned a debtor that proved unable to meet Subchapter V deadlines, *id.* at 349, but that might have been able ". . . to continue to attempt to reorganize under the rigors and requirements of standard chapter 11," *id.* The opinion is noteworthy because it was the first to recognize that a court may *sua sponte* revoke a Subchapter V debtor's small business election, but the holding also turns on the utter incompetency of the debtor in that case, *id.*, *passim*, and not any definitional eligibility shortcomings. To be sure, the debtor in *Nat'l Small Bus. All.* was a "small business debtor," the eligibility of which to seek to reorganize in Subchapter V was never questioned.[1] The case, rather, focusses on the debtor's ineptitude in endeavoring to reorganize, as punctuated by the entity (i) being dispossessed; and (ii) failing to confirm any one of *five* plans of reorganization. *Id.* at 350. Suffice it to posit, the Debtor

---

[1] *Nat'l Small Bus. All.* did involve questions, outside the published opinion, concerning the authority of an entity to petition for bankruptcy relief after being committed to state court receivership. Suffice it to posit, such questions are immaterial *sub judice*.

has not been disposed, has not missed a single deadline and, as of present, has only proposed a single plan of reorganization (which has not yet come on for confirmation) and has complied with the Court's Scheduling Order incident to the consideration of that plan.

The final Subchapter V case relied upon by the Movants is *Johnson*, the above-cited case discussed by the *Offer Space* Court. This is the lone referenced case where persons were found to not qualify a small business debtors. Both debtors in that case were natural persons. *Id.* at *1. One had formerly owned a series of companies that were all defunct at least two years before the petition date. *Id.* at *5. Thereafter, one debtor started working for a family business and, when that debtor's father died, the whole of the family business was bequeathed to the debtor's mother, who "obtained (and continues to have) ultimate control of [the company] and its operations, including the ability to hire and fire officers and employees at will." *Id.* at *7.

Both *Johnson* debtors held ordinary jobs (albeit one with a family business). One was saddled with debts from his former ownership of companies. *Id.* at *7. Yet, "[a]s disclosed by the Debtors in their bankruptcy filings, and as acknowledged at the hearing, as of the Petition Date neither of the Debtors owned an interest in any operating businesses and neither of the Debtors was engaged in any business of his/her own." *Id.* at *8.

There is no dispute but that the Debtor is not a natural person, is not a W-2 employee, and the Debtor most certainly does not acknowledge lacking engagement in business of its own. To the contrary, the Debtor is actively engaged in litigation, actively holds multiple promissory notes, is actively endeavoring to collect upon those notes, is actively working to be able to foreclose two deeds of trust, and is assuredly not a consumer.

The Objection offers nothing further to analyze, excepting periodic attacks that the Debtor is "not a legitimate business," Objection, DE #42, at ¶ 1, and "has conducted no legitimate business

activities," *id.* at ¶ 3. Yet, as seems to be a recurring issue with the Movants' positions in this bankruptcy case, these are not substantive assertions that apply relevant facts to applicable law so much as these are *ipso facto* conclusions seemingly unmoored to either fact or law. It is no secret that the Movants dislike that an entity was created for purposes of acquiring some of the debt of DRL and 423 Kennedy; that dislike, however, does not render the holder of their debts a "sham company," *id.* at ¶ 20, devoid of legitimacy.

That the Objection never so much as contemplates a definition of what is a "legitimate" business only compounds the problem. This Honorable Court is regularly confronted with single Member limited liability companies formed to facilitate single transactions; when those transactions involve real estate with fewer than four residential units, the companies often seek refuge in Subchapter V. Assuredly these are "legitimate" businesses. And it is genuinely difficult to discern any brightline test the Movants seem to believe ought to distinguish the Debtor from this rather frequent variety of small business debtors.

More problematically, though, the Movants' grievances appear almost-uniformly aimed at the *bona fides* of the Debtor's formation and designs, not the Debtor's Subchapter V eligibility. Such would not be as outwardly concerning if the Movants had not already moved to dismiss this bankruptcy case on the premise that the Debtor is not a good faith debtor. *See* Motion to Dismiss, DE #19. But that the instant Objection was filed one day *after* that motion to dismiss was denied necessarily raises questions about the good faith of the Movants in endeavoring to re-raise the same issues under the façade of a small business eligibility challenge.

Those good faith concerns, however, are not nearly as potent as the ones inherent from the issues raised in this brief. The Debtor assuredly meets the statutory definition of "small business debtor" set forth in the Bankruptcy Code. And the barest legal research into the phrase "engaged

in commercial or business activities" reveals that the Debtor does, too, readily satisfy the prevailing standards from seemingly every court to have ever addressed the matter. Assuredly Movants know as much; yet for reasons that certainly appear to be predominately vexatious in nature, Movants have nonetheless elected to docket their Objection, notwithstanding the wide swath of authorities clearly holding against the position being advocated therein, and notwithstanding a lack of even colorable authority that supports the position being advanced.

Somewhat ironically, these realities create a prism whereby it appears to be the Objection that may be rightfully characterized as a "sham" that lacks "legitimacy."

## V.    Conclusion

WHEREFORE, the Debtor and WCP respectfully pray this Honorable Court (i) overrule the Objection; and (ii) afford such other and further relief as may be just and proper.

*[Signatures and Certificate of Service on Following Page]*

Respectfully submitted,

Dated: August 4, 2025        By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*


  /s/ Jeffrey M. Orenstein
Jeffrey M. Orenstein, Esq.
Bar No. 428335
Wolff & Orenstein, LLC
15245 Shady Grove Road
Suite 465
Rockville, MD  20850
Phone :  (301) 250-7232
jorenstein@wolawgroup.com
*Counsel for the Debtor*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig