UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

IN RE:                                              *

JPK NewCo, LLC                          *      Case  No. 25-00200-ELG
                                                          Chapter 11 (Subchapter V)

          Debtor                               *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

FIRST APPLICATION OF WOLFF & ORENSTEIN, LLC FOR
ALLOWANCE OF INTERIM COMPENSATION FOR PROFESSIONAL
SERVICES RENDERED FROM MAY 27, 2025, THROUGH MAY 31, 2026

Pursuant to 11 U.S.C. § 331 and Local Bankruptcy Rule 2016-1, Wolff & Orenstein,

LLC. ("Applicant"), bankruptcy counsel to the Debtor, JPK NewCo, LLC (the "Debtor") files its

First Application ("Fee Application" or "Application") for Allowance of Interim Compensation

for Professional Services Rendered from May 27, 2025, through May 31, 2026 (the "First Interim

Period"), and respectfully represents as follows:

Background

1.      On May 27, 2025 (the "Petition Date"), the Debtor file a Voluntary Petition (the

"Petition") for relief under Chapter 11, Subchapter V, of the Bankruptcy Code.

2.      On May 28, 2025, the Debtor filed an Application to retain Applicant as its

attorneys in this bankruptcy case (the "Employment Application").

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Attorneys for JPK NewCo, LLC                          1

3.      On June 27, 2025, with no objections having been filed, the Court entered an Order approving the Employment Application.

4.      As disclosed in the Employment Application, W&O is holding in the sum of $15,462.00 in its trust account as a retainer for post-Petition services, subject to application and allowance by this Court.

The Interim Fee Application

5.      In this first Interim Fee Application, Applicant seeks interim allowance of compensation and reimbursement of expenses incurred by Applicant on behalf of the Debtor as Debtor-in-Possession pursuant to § 331 of the Bankruptcy Code.  In this Application, Applicant seeks an allowance of compensation and reimbursement of expenses for time spent and expenses incurred from May 27, 2025 through May 31, 2026.  Attached to this Application as **Exhibit A** is a detailed breakdown of services rendered in connection with services which are the subject of this Application, reflecting time charges at the hourly rates of the respective attorneys and professional staff of Applicant (the "Statement").[1]  The Statement reflects the dates, description of services, and identity of the professional staff members performing such services.  As disclosed in the Employment Application, the rates charged by Applicant in this case are the rates customarily charged on both bankruptcy and non-bankruptcy matters, without considering the size of the case

---

[1]    The original rates of the attorneys that have provided services to the Debtor were included in the Employment Application.  Under typical circumstances, confirmation of the Debtor's Plan of Reorganization would have been considered prior to the end of calendar year 2025 and there would have been no change in those hourly rates.  This case has been anything but typical and, as a result, on September 9, 2023, the Court entered an Order suspending consideration of confirmation of the Debtor's Plan.  Because of that delay, on December 22, 2025, Applicant filed a  Status Report Regarding Change of Billing Rates for Wolff & Orenstein, LLC - Attorneys for the Debtor, addressing new rates that would go into effect on January 1, 2026.

and the degree of responsibility, difficulty, complexity and results achieved for bankruptcy legal matters handled by Applicant.

6.       The Statement reflects time expended by professional staff of Applicant totaling fifty and five tenths (50.5) hours and billable time totaling Twenty-Four Thousand Six Hundred Forty-Four Dollars and Fifty Cents ($24,644.50).  In preparing the Statement, W&O has reviewed the time charges to make sure that such time charges did not contain inefficiencies, excessive time spent in researching legal issues, and possible duplication of effort.  Applicant does not believe the time charges contain inefficiencies, excessive time spent in researching legal issues, or any duplication of effort.  The time charges do, however, reflect minimal charges relating to litigation matters that are primarily being handled by special counsel.[2]  While the time spent on those activities were necessary in order to coordinate bankruptcy case activities and to provide the Debtor the representation that it sought, Applicant believes it is appropriate to exercise billing discretion for a portion of the time spent on those activities.  After due consideration, Applicant has decided to voluntary reduce the amounts reflected in the time charges by Two Thousand One Hundred Forty-Four Dollars and Fifty Cents ($2,144.50).  Applicant therefore seeks compensation for the First Interim Period in the reduced amount of Twenty-Two Thousand Five Dollars ($22,500.00).

7.       Applicant also has incurred out-of-pocket expenses on behalf of the Debtor.  Those expenses in the amount of two hundred nineteen dollars and sixty-nine cents ($219.69), which were incurred on May 28, 2025, June 2, 2025, July 30, 2025, respectively, for third-party copying and mailing of documents required to be served on the matrix, are also set forth on **Exhibit A** and

---

[2]    For reasons unknown to Applicant, special counsel has filed a motion to withdraw in this case.  Applicant is not presently aware of what impact, if any, that motion will have on Applicant's continued services in the case.

highlighted in orange.   As a further exercise of billing discretion, Applicant is waiving reimbursement of those expenses.

8.      No agreement exists between Applicant and any other person, other than  employees of  the Applicant's law firm, for the sharing of compensation received for services rendered in connection with this case.

Compensation Guidelines and Analysis

9.      Applicant submits the following standards have been complied with or are being complied with in this Application:

A.      **Exhibit A** hereto represents a detailed statement of the services rendered, time expended and expenses incurred in the course of providing professional services to the Debtor.

B.      As noted above, Applicant has elected to voluntarily reduce the time value of its services by the sum of Two Thousand One Hundred Forty-Four and Fifty Cents ($2,144.50) and, as a result, the total compensation requested, as reduced from the amounts set forth in **Exhibit A**, is Twenty-Two Thousand Five Dollars ($22,500.00).

C.      Applicant believes that the services rendered were necessary in representing the Debtor and were beneficial to its estate at the time the services were rendered.  As reflected in **Exhibit A**, much of the time and effort has been spent in performing tasks that are typical in a case under Subchapter V of Chapter 11.  Applicant spent time working with the Debtor to prepare the Debtor's Schedules, Statement of Financial Affairs, and other documents that are typically filed at the outset of the case.  Applicant worked with the Debtor to provide an outline of a Plan and to take the steps necessary to construct and prepare for the implementation of the Plan.  Applicant filed applications to permit the Debtor to employ professionals.  Applicant attended the Initial Debtor

Interview and attended the Meeting of Creditors. Applicant prepared the required Status Report and attended the status conference required by 11 U.S.C. § 1188(a). Most importantly, Applicant prepared and filed the Debtor's Plan of Reorganization and served the documents related to balltoing on and approval of the Plan. The Plan is a confirmable Plan and is not just some placeholder designed to buy time. Indeed, as observed by the Court in its Memorandum Opinion on Motion to Dismiss [ECF No. 92]:

> While the determination of whether the Plan is ultimately confirmable was not before the Court at the Hearing, the Court examined the Plan prior to the Hearing to ensure it was not simply a "placeholder" document. Without making any specific findings, the Court notes that the Plan is not patently unconfirmable on its face as it contains (i) the history of the Debtor, (ii) a liquidation analysis, and (iii) projections, as required by § 1190. The Debtor's case is unlike most cases evaluating objective futility where the only available evidence on the likelihood reorganization are a debtor's representations as to potential reorganization plans.
>
> The objective factors in this case, such as the filing and timing of the petition and the fact that the Debtor was created as a holding company used for reorganization to repay creditors, do not point to objective futility. While the reorganization may provide the Debtor with a litigation advantage, such factor itself does not lead to a finding of objective futility. As the Third Circuit acknowledged in In re LTL Management, the purpose of filing a petition may very well be to beat litigation, but "still, it is not bad faith to seek to gain an advantage from declaring bankruptcy — why else would one declare it?" Therefore, examining the totality of the facts and circumstances, the Court finds that the Debtor has a reasonable likelihood of reorganization and there is a potentially confirmable plan pending. [footnotes omitted].

D.    Applicant hereby confirms that it has reviewed the time and expenses for which compensation is sought in this Application (**Exhibit A** hereto) and believes such compensation, especially with the voluntary reduction applied to Applicant's request, to be reasonable based on compensation approved by Bankruptcy Courts in similar cases.

Applicant has also reviewed the time records set forth on **Exhibit A** by performing an analysis of the major tasks performed in the course of representing the Debtor during the First Interim Period.  A summary of the professional services performed during the First Interim Period on a task-by-task basis is set forth on **Exhibit A**.

10.    During the First Interim Period, attorneys Jeffrey M. Orenstein and Matthew Abbott provided all of the professional services to the Debtor.  No other W&O attorney provided services.  The billing rate, date of admission to the Bar, areas of practice and numbers of hours is as follows:

PROFILE OF ATTORNEY AND PROFESSIONALS
WHO PERFORMED SERVICES FOR THE DEBTOR

| PROFESSIONAL and ROLE | DATE OF ADMISSION | BILLING RATE | HOURS BILLED | AMOUNT BILLED |
|---|---|---|---|---|
| Jeffrey M. Orenstein – Member (General Bankruptcy and Litigation) | MD - 1985; DC –1991 | $511.348 | 44.50 | $22,755.00 |
| Matthew E. Abbott – Associate (General Bankruptcy and Litigation) | MD – 2020 | $314.917 | 6.00 | $1,889.50 |
| Jessica B. Wolff – Paralegal | | $150.00 | .00 | $000.00 |
| Total | | | 50.50 | $24,644.50 |
| Total blended hourly rate of attorneys | | $488.01 | | |

Lodestar Analysis

Under the lodestar analysis of twelve (12) factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), and adopted by this Circuit in In re AOV Industries, Inc., 797 F.2d 1004 (D.C. Cir. 1986), Applicant submits the following analysis:

A.    Time and Labor Expended.  The detailed statement of services of Applicant is attached as **Exhibit A.**  Applicant has reviewed the Statement for duplicate or unnecessary entries, has determined that charges have not been assessed for time that is duplicate, and that all time billed was for services that were necessary under the circumstances of the case.  To the

6

extent that the Court or other parties in interest believe that there were duplicate or unnecessary entries, Applicant asserts that the value of those entries would be substantially less than the Two Thousand One Hundred Forty-Four and Fifty Cents ($2,144.50) that Applicant has cut in its own exercise of billing discretion.  The time entries reflect, in Applicant's judgment, the efficiency with which Applicant handled the representation of the Debtor during the First Interim Period.

B.      Novelty and Difficulty of Questions Raised.  As addressed by the Court's Memorandum Opinion on Motion to Dismiss, referenced above, which was issued in connection with an appeal of the Court's denial of a motion to dismiss this bankruptcy case, the issues raised in this case to date have proven to be both novel and difficult.  It is fair to say that most of those novel and difficult issues have been directly addressed by the Debtor's special counsel; however, Applicant has been required to be involved in those issues and has had the disposition of this case delayed as a result of those issues.

C.      Skill Required to Properly Perform Legal Services Rendered.  Because of the nature of the issues discussed above, in order to adequately represent the Debtor during the course of these proceedings, an expertise in the area of bankruptcy law, and federal litigation and procedure was required.  Applicant believes that the skill was required in order to properly perform the legal services required by the Debtor and that Applicant possess such skills.  The lion's share of the services were provided by Jeffrey Orenstein who, after serving as a judicial intern to the Honorable Roger Whelan while in law school, has practiced for more than forty (40) years with the largest portion of that time being devoted to bankruptcy and commercial litigation. Jeffrey Orenstein has been involved in numerous complex Chapter 11 cases, has served as a Chapter 11 Trustee, a Chapter 11 Examiner, counsel to Official Creditors' Committees, and

regularly serves as counsel and/or special counsel to Chapter 7 trustees.  Matthew Abbott is an associate attorney who performed tasks where appropriate at a lower hourly rate than the Mr. Orenstein's rate.

> D.  Counsel's Opportunity Costs in Prosecuting the Instant Case.  Applicant is always engaged in other pending proceedings and, during the time that Applicant has been actively engaged in this case, it was necessarily precluded from spending that time on other matters that would have resulted in payment of fees to Applicant on a monthly basis.  While always important to a small firm like Applicant, this was not an overly significant factor in the limited scope of this particular case.[3]

> E.  Customary Fees for Like Work.  The customary fees charged in these matters are normally measured by the time expended and the results obtained.  In representing the Debtor, Applicant has billed at its usual and customary rates as those rates were then in effect for all similar bankruptcy and non-bankruptcy cases at all times that services were provided. Based upon an informal survey of fees charged by similarly experienced attorneys in the area for similar types of work, and having had its fees reviewed by this Court in other matters, Applicant is confident that both its hourly rates and the total fees it charges for services have been, and remain, below what other firms and attorneys charge or charged for similar services during the

---

[3]  While not directly related to this case, the impact on Applicant has been greater because of an unrelated , and highly contested case pending in this Court in which Applicant has been delayed from receiving fees because of expansive litigation in an involuntary case.  The combination of the delay in receiving fees in these two cases is especially significant for a small firm like Applicant.

relevant time periods covered.  Suffice to say that Applicant's rates are certainly not at the high end of the range of said fees.

F.       Counsel's Expectation at the Outset of Litigation.  Applicant's expectation at the outset of the case is that it would assist the Debtor in filing a Chapter 11 bankruptcy case and seeking confirmation of a Chapter 11 Plan that itself was not complicated, but that depended upon the results of litigation to fund the Plan.  Applicant anticipated that the litigation would be handled by special counsel and might be contentious, but at the time the case was filed, Applicant had no reason to believe that the litigation would delay consideration of the Debtor's Plan. Applicant timely filed the Debtor's Plan; in fact, the Plan was filed early. Nonetheless, more than one year after the Petition was filed, and due to delays that were not caused by the Debtor, the case is nowhere near a confirmation hearing.  Applicant has done its part as is ready to proceed to confirmation when the Court allows it.

G.       Time Limitations.  Applicant does not believe that time limitations in representing the Debtor was a significant factor in this proceeding.

H.       Amount in Controversy and Result Obtained.   As addressed above, although the Debtor's Plan has been filed, the Court's consideration of confirmation of the Plan has been delayed by a pending appeal of the Court's denial of a motion to dismiss filed by two of the Debtor's creditors.  To this point, Applicant believes that it has done everything necessary to get the Debtor in a position to have its Plan confirmed and, for that reason, believes that it has obtained good results for the Debtor.  The fees requested are reasonable for this case and the

services performed by Applicant to address the issues in this case were necessary and have benefitted the estate.

       I.       Experience, Representation and Ability of Counsel.  W&O's attorneys possess the experience to provide the required bankruptcy legal services which the Debtor required in the First Interim Period.

       J.       Undesirability of Case.  Notwithstanding the delays, at this point, Applicant does not consider this engagement to have been undesirable.

       K.       Professional Relationship with Client.  This is the Debtor's second bankruptcy case.  Applicant represented the Debtor in the first case and was paid for its services.  No amounts were due to Applicant at the time the present case was initiated.  Applicant had no relationship with the Debtor prior to the first case.

       L.       Fee Awards in Similar Cases.  The services for which compensation is sought in this Application were provided at standard hourly rates of Applicant's professional staff.   Based upon the time invested and the results achieved to date, and as described in more detail herein, Applicant believes that the fees it will actually receive in this matter are substantially lower than what other attorneys receive in cases where similar services are provided.  Applicant submits that the fees requested herein are appropriate under the circumstances of this case.

WHEREFORE, Applicant prays that it be awarded interim compensation for the First Interim Period in the amount of Twenty-Two Thousand Five Hundred Dollars ($22,500.00), that Applicant be authorized to apply the $15,462.00 retainer to the allowed fees, that the balance of

said award be paid by the Debtor, and that Applicant have such other and further relief as this

Honorable Court may deem just and proper under the circumstances.

Respectfully submitted,

 \s\ Jeffrey M. Orenstein  
JEFFREY M. ORENSTEIN (#428335)  
Wolff, & Orenstein, LLC  
15245 Shady Grove Road  
North Lobby, Suite 465  
Rockville, Maryland  20850  
(301) 250-7232  
jorenstein@wolawgroup.com

Attorneys for JPK NewCo, LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 16th   day of June, 2026, a copy of the foregoing was sent via the Court's CM/ECF system to:

Kristen E Burgers, Esq. @ kburgers@hirschlerlaw.com  
Kristen S. Eustis, Esq. @ Kristen.S.Eustis@usdoj.gov  
Maurice Belmont VerStandig, Esq. @ mac@mbvesq.com  
James D. Sadowski, Esq. @ jds@gdllaw.com  
Hugh M. Bernstein, Esq. @ hugh.m.bernstein@usdoj.gov  
Stephen A. Metz, Esq. @ smetz@offitkurman.com  and MD71@ecfcbis.com

 \s\ Jeffrey M. Orenstein  
Jeffrey M. Orenstein